UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES BENJAMIN, as Trustee of the
REBEKAH C BENJAMIN TRUST,

        Plaintiff,

v.

        Case No. 18-cv-10849
        Honorable Thomas L. Ludington

JOHN STEMPLE AND JANET SANTOS,
in their official and individual capacities,

        Defendants.

_____/

**ORDER GRANTING MOTION TO INTERVENE, DENYING MOTION FOR PRELIMINARY INJUNCTION, GRANTING MOTION TO DISMISS, AND DISMISSING AMENDED COMPLAINT**

On March 14, 2018, Plaintiff James Benjamin, trustee for the Rebekah C. Benjamin Trust, filed suit against Defendant John Stemple and Janet Santos, employees of the City of Saginaw. ECF No. 1. In the suit, Benjamin alleges that the City of Saginaw requires owners of "vacant, but maintained, properties to 'register' their property in order to obtain licensing compliance." Benjamin contends that, as part of that registration, the City requires property owners to consent to the City entering the properties if they become dangerous. Benjamin argues that this registration form violates the doctrine of unconstitutional conditions. On May 15, 2018, Defendants filed a motion to dismiss. ECF No. 9. Two days later, Plaintiff filed an amended complaint. ECF No. 10. Defendants promptly moved to dismiss, and a hearing on that motion has been scheduled for September 11, 2018, at 4:00 p.m. ECF No. 13.

On June 11, 2018, Benjamin filed a motion for a preliminary injunction. Mot. Prelim. Inj., ECF No. 16. Because Benjamin was seeking the injunction to prevent an injury which he did not

share with the putative class, the motion was denied for lack of standing. ECF No. 18. The next day, two putative class members filed a motion to intervene (with assistance of Benjamin's counsel) and a second motion for a preliminary injunction. As before, the intervenors request judicial action by June 22, 2018.

**I.**

Benjamin's amended complaint challenges the City of Saginaw's practice of requiring "owners of vacant, but maintained, properties to 'register' their property in order to obtain licensing compliance as to their vacant houses and also to allow the City 'maintain a registry of all unoccupied properties.'" Am. Compl. at PageID.106. In particular, Benjamin is challenging the City's decision to allegedly require that "property owners and controllers surrender their Fourth Amendment constitutional protections against warrantless entry into the private homes and private properties for administrative inspections," as "a condition of fulfilling that legal licensing compliance and obtaining a license/authorization to have vacant property in the City of Saginaw." *Id.* at PageID.106–07. The registration form at issue "contains non-optional language which mandates that the owner agrees 'that in the event my property becomes dangerous as defined by the City of Saginaw Dangerous Building Ordinance, State Law, or the City of Saginaw Housing Code, I give permission for the City, its agents, employees, or representatives, to enter and board the premises or do whatever necessary to make the property secure and safe.'" *Id.* at PageID.111–12.

Benjamin alleges that "[o]n January 11, 2018, Defendant JOHN STEMPLE issued two municipal citations (i.e. tickets) on Plaintiff TRUST." *Id.* at PageID.113. Plaintiff further alleges that "[a]t the time of filing, Defendant JOHN STEMPLE . . . is actively seeking to impose penalties on Plaintiff TRUST and Class members for not waiving the Fourth Amendment rights of Plaintiff

TRUST and Class members." *Id.* at PageID.115. The amended complaint cites to Exhibits C and D in support of that allegation. Those exhibits are composed of two "Uniform Municipal Civil Infraction Citation[s]" issued to Benjamin for "Failure to register vacant dwelling[s]." Citations, ECF No. 10, Exs. C, D. Exhibits F and G of the amended complaint indicate that hearings on the citations were scheduled for March 22, 2018. ECF No. 10, Exs. F, G.

In the second motion for a preliminary injunction, the intervenors allege that they have been subject to similar enforcement proceedings. They contend: "After refusing to waive their constitutional rights (which is not at all require [sic] or directed by the [Unsupervised Properties Ordinance]) Defendant John Stemple issued Proposed Intervening Plaintiffs as Trustees, Plaintiff Benjamin as Trustee, and other class members civil infraction tickets and sought judicial enforcement." Inter. Mot. Prelim. Inj. at PageID.300, ECF No. 20. Exhibit 1 to the motion for a preliminary injunction is a notice of a hearing issued to the Jones Family Trust/Bobby Jones. Jones Notice, ECF No. 20, Ex. 1. The hearing on the citation is currently set for June 22, 2018. The intervenors request that the Court resolve the motion for a preliminary injunction before that date by entering an order enjoining Stemple from initiating these enforcement actions against the intervenors and all putative class members.

**II.**

Motions to intervene are governed by Federal Rule of Civil Procedure 24(a). That Rule specifies that "[o]n a timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *Id.* at Rule 24(a)(2). The Sixth Circuit has derived fourth elements from the rule: "(1) the motion to intervene is timely;

(2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir.1999)).

Pursuant to Federal Rule of Civil Procedure 65(a), the "court may issue a preliminary injunction only on notice to the adverse party." The Sixth Circuit has interpreted that requirement as implying "'a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) (quoting *County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 484 (6th Cir. 2002)). But "a hearing is only required when there are disputed factual issues, and not when the issues are primarily questions of law." *Id.* To summarize:

> "[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing."

*Id.* at 553 (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)).

Four factors govern whether the Court will issue a preliminary injunction: (1) whether the plaintiff has demonstrated a substantial likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would harm others; and (4) whether the public interest is served by granting injunctive relief. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (citation omitted); *see also Ne. Ohio Coal. For Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites, but are factors that are to be balanced against each

other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

### III.

As noted above, Benjamin's motion for a preliminary injunction was denied because he lacked standing to request the injunction on behalf of putative class members. In response, Plaintiff's counsel has filed a motion to intervene by putative class members who are presently subject to ongoing enforcement efforts by Defendants. If the intervention is permitted, these proposed intervenors would possess standing to seek the preliminary injunction on behalf of the putative class. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 517 (6th Cir. 1976) ("[O]nce an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.").

Given this dynamic, the request for a preliminary injunction can only be properly framed for adjudication if brought by a putative class member other than Benjamin. Absent intervention, the putative class members will be subject to enforcement measures until the legitimacy of the City's practice is considered on its merits. Benjamin (and intervenors) alleges that the enforcement proceedings are intentional efforts to coerce putative class members into waiving their constitutional rights. If true, that constitutes a substantial legal interest. Benjamin's lack of standing to request a preliminary injunction on behalf of the class demonstrates that the intervenors' rights cannot be adequately protected by Benjamin, and so intervention is warranted.

Accordingly, the question is whether class-wide preliminary injunctive relief is warranted. Although the intervenors' motion is styled as a request for a preliminary injunction, they request a decision before June 22, 2018. As indicated above, a preliminary injunction cannot be granted without a fair opportunity for Defendants to oppose the motion. *Certified Restoration Dry*

*Cleaning Network, L.L.C.*, 511 F.3d at 552. Given the expedited nature of the intervenors' request, Defendants will not receive that opportunity prior to June 22, 2018. The motion is thus essentially a request for a temporary restraining order.

Federal Rule of Civil Procedure 65 provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if two requirements are satisfied: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The same factors which govern the issuance of preliminary injunctions also apply to requests for temporary restraining orders. *See Hamilton's Bogarts, Inc.*, 501 F.3d at 649.

When analyzing a request for a preliminary injunction, the likelihood of success on the merits is often the dispositive consideration. *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). As with the other three factors, the plaintiff bears the burden of "showing . . . 'a strong or substantial likelihood or probability of success on the merits.'" *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989) (quoting *Mason Cty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977)).

**A.**

The intervenors' claim is premised on the unconstitutional conditions doctrine. This doctrine is derived from a number of cases which stand for "an overarching principle . . . that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). In other words,

> [The Supreme] Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which (it) could not command directly.' *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible.

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

More specifically, "[a] predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Koontz*, 570 U.S. at 612. Although the unconstitutional conditions doctrine "has been most consistently applied to protect First Amendment rights," it also "prohibits the government from conditioning benefits on a citizen's agreement to surrender due process rights." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434 (6th Cir. 2005).

The intervenors argue that the language of the Unoccupied (Vacant) Property Registration form violates this doctrine: "Defendant Stemple . . . is trying . . . to accomplish indirectly what cannot be accomplished directly under the Constitution—the waiver of a warrant for administrative searches under the Fourth Amendment by trickery." Inter. Mot. Prelim. Inj. at PageID.305. That registration form requires owners of vacant properties to sign a section

> agree[ing] that in the event my property becomes dangerous as defined by the City of Saginaw Dangerous Building Ordinance, State Law, or the City of Saginaw Housing Code, I give permission for the City, its agents, employees, or representatives, to enter and board the premises or do whatever necessary to make the property secure and safe. I further hold the City harmless from all claims arising out of any actions in relation to the boarding or securing of said premises. I further agree to reimburse the City of Saginaw for all expenses incurred in securing said premises.

Regis. Form, ECF No. 10, Ex. B.

In their motion to dismiss, Defendants briefly argue that the unconstitutional conditions doctrine simply does not apply at all to the claims raised in this case. Defendants contend that the doctrine is inapplicable because (1) no benefit is being conferred upon Plaintiff and (2) the registration requirement is not discretionary. Neither argument has any merit. If a person wants to own vacant property in Saginaw without paying fines and being subject to civil enforcement proceedings, they must register the property. The "benefit" at issue is the person's ability to fully exercise his or her rights of property ownership without government interference. *See R.S.W.W. Inc.* at 397 F.3d at 426 ("'The legal definition of 'property' most often refers not to a particular physical object, but rather to the legal bundle of rights recognized in that object.'") (quoting *Brotherton v. Cleveland*, 923 F.2d 477, 481 (6th Cir.1991)).

And the fact that all vacant properties owners must register simply underscores the applicability of the unconstitutional conditions doctrine. Some cases do appear to suggest that the doctrine of unconstitutional conditions only applies when the government is conditioning a discretionary benefit on the surrender of a constitutional right. *See Dolan*, 512 U.S. at 385 ("[T]he government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property."). But many other cases make clear that the doctrine applies *even* to scenarios involving discretionary benefits, not *exclusively* to such circumstances. *See, e.g., Perry*, 408 U.S. at 597 ("[T]his Court has made clear that even though a person has no 'right' to a valuable governmental benefit and *even though* the government *may* deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.") (emphasis added); *Amelkin v. McClure*, 330 F.3d 822, 827 (6th Cir. 2003) (discussing "the 'unconstitutional-conditions' doctrine, which holds that government may not grant a benefit on the condition that

the beneficiary surrender a constitutional right, *even if* the government *may* withhold that benefit altogether." (emphasis added) (internal citations omitted). Defendants' implied assertion that Saginaw can condition a benefit on the surrender of a constitutional right so long as they require *everyone* to seek the benefit and consequently surrender that right is nonsensical. That holding would eviscerate the doctrine of unconstitutional conditions. Some cases emphasize that the doctrine applies even to discretionary benefits because applicants for those benefits "are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits." *Koontz*, 570 U.S. at 605. But government coercion of this kind is invalid even if the pressure is levied in an indiscriminate fashion.

**B.**

The crux of the intervenors' claim, then, is whether the language of the registration form constitutes a waiver of a constitutional right. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Am. IV. "The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967). Generally, "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Id.* at 528–29. But exceptions to the warrant requirement exist.

One of those exceptions is the "administrative search" exception. *See Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523 (1967). These searches, which serve some

"special need" other than crime control, are governed by the Fourth Amendment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). But because the rationale and need for these kinds of searches often "'make the warrant and probable-cause requirement impracticable,'" the "reasonableness" requirement of the Fourth Amendment sometimes requires something less than a warrant. *Id.* (quoting Griffin v. Wisconsin, 483 U.S. 868, 873 (1987)). The Supreme Court has explained that "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015).

As explained above, the claims in this case are premised on the following language in the vacant properties registration form:

> [I]n the event my property becomes *dangerous as defined by the City of Saginaw Dangerous Building Ordinance*, State Law, or the City of Saginaw Housing Code, I give permission for the City, its agents, employees, or representatives, to enter and board the premises or do whatever necessary to make the property secure and safe. I further hold the City harmless from all claims arising out of any actions in relation to the boarding or securing of said premises. I further agree to reimburse the City of Saginaw for all expenses incurred in securing said premises.

Regis. Form, ECF No. 10, Ex. B (emphasis added).

The City of Saginaw's Dangerous Buildings Ordinance "establishes procedures to determine if a building, structure, or part thereof is dangerous." Sag. Code Ord. § 151.110. Section 151.113 discusses how those procedures are commenced. Specifically,

> The Chief Inspector . . . shall examine or cause to be examined every building, structure or portion thereof reported as unsafe or damaged, *and if such is found to be a dangerous building as defined in this subchapter*, he or she shall commence proceedings to cause the alteration, repair, or rehabilitation, or the demolition and removal of the building, structure, or portion thereof.

*Id.* at § 151.113.

The next several sections in the Ordinance provides the procedure by which a building or structure is defined as dangerous. *See id.* at § 151.114–118. First, the Chief Inspector issues a "Notice of Defects" to the owner of the building. *Id.* at §151.114(A)(1). The notice must be served on the owner or their agent within ten days of the hearing. *Id.* at § 151.114(D). The Mayor then appoints a hearing officer to conduct a public hearing. *Id.* at § 151.115(A). "At the conclusion of the hearing, the Hearing Officer shall make written findings of fact based upon the competent evidence and testimony admitted during the hearing." *Id.* at § 151.115(G). Within five days, "the Hearing Officer shall render a decision either closing the proceedings or determining that the building is a dangerous building." *Id.* at § 151.115(H). If the owner wishes, they may appeal that determination to the Housing Board of Appeal, *see id.* at § 151.117, and eventually seek judicial review, *see id.* at § 151.118. At the conclusion of the administrative proceedings, the City Inspector is empowered to "take all necessary action to enforce the [remediation] order." *Id.* at § 151.117(C).

Thus, the Saginaw Dangerous Buildings Ordinance ensures a building is not defined as "dangerous" until after a hearing before an impartial adjudicator. The registration form wavier which is at issue in this case is expressly conditioned on the "property becom[ing] dangerous as defined by the City of Saginaw Dangerous Building Ordinance." Regis. Form, ECF No. 10, Ex. B (emphasis added). In other words, that waiver simply provides the City authority to enter and remediate the structure *after* a full hearing and subsequent determination that the building was dangerous. This process is both reasonable and provides more than adequate due process. *See Patel*, 135 S. Ct. 2443, 2452 (2015).

The intervenors' motion appears to be premised on a fundamental misunderstanding regarding what, exactly, is being waived pursuant to the registration form. They appear to believe that the registration form waiver authorizes the City to conduct warrantless administrative

inspections. *See* Inter. Mot. Prelim. Inj. at PageID.308 ("As a condition of fulfilling legal licensing compliance and obtaining a license/authorization to have vacant property in the City of Saginaw, . . . these Defendants self-required that property owners and controllers surrender their Fourth Amendment constitutional protections against warrantless entry into the private homes and private properties for administrative inspections."). That is simply inaccurate. The plain language of the waiver, when read in conjunction with the plain language of the Dangerous Buildings Ordinance, makes clear that a building is "defined as dangerous" only after notice and a hearing before a neutral decision maker (absent emergency circumstances, which are not alleged here). Thus, any entry onto a property as contemplated by the waiver comes after a process that, per *Patel*, is sufficient to protect the property owner's constitutional rights. In other words, because the City could constitutionally enter and remediate vacant properties after the administrative hearing regardless of whether the waiver was signed, no constitutional right is being waived. Accordingly, the intervenors' unconstitutional conditions claim is not likely to succeed on the merits. *See Koontz*, 570 U.S. at 612 ("A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing.").

Importantly, the Dangerous Buildings Ordinance does not specifically explain how the Chief Inspector examines a building which has been reported as potentially dangerous (i.e., how the City determines that a hearing on whether a building is dangerous is necessary in the first place). Conceivably, the inspection process could involve intrusions which violate the Constitution. Benjamin and the intervenors appear to be attempting to assert a claim of that nature. But the waiver contained in the registration form says nothing about these pre-hearing inspections, and so the right to challenge any such inspection is not being waived. Neither the amended

complaint nor the intervenors' motion for a preliminary injunction allege that the City violated their constitutional rights during a pre-hearing inspection. If that occurs (or did occur), a constitutional claim might arise. But that claim would not be premised on the unconstitutional conditions doctrine. And until an individual alleges that they were personally subject to an unconstitutional pre-hearing search, Benjamin and the intervenors lack standing to challenge the ordinance and the City's practice of enforcing it.

Because the intervenors will not prevail on the merits of their claim, injunctive relief is not warranted. The remaining factors which govern the issuance of preliminary injunctions need not be considered.

## IV.

Defendants have filed a motion to dismiss the amended complaint. ECF No. 13. For the same reasons that preliminary injunctive relief is not warranted, the amended complaint fails to state a claim.

### A.

Defendants have moved to dismiss both for lack of standing and for failure to state a claim. Rule 12(b)(1) provides the means by which a party may assert lack of subject-matter jurisdiction as a defense. "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* However, a "factual attack challenges the factual existence of subject matter jurisdiction." *Id.* In that case, "the district

court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015). Regardless, "the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

**B.**

As explained above, the registration form does not require the waiver of any constitutional right. Accordingly, the amended complaint fails to state a claim. However, in their motion to dismiss, Defendants focus their argument primarily on the assertion that Benjamin lacks standing. Because standing must be confirmed before a claim can be addressed on the merits, that argument will be briefly considered.

Article III, § 2 of the U.S. Constitution limits federal court jurisdiction to "Cases" and "Controversies." The doctrine derived from Art. III, § 2 imposes the requirement of standing:

federal jurisdiction exists only if the dispute is one "which [is] appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). For standing to exist, three elements must be satisfied: injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61(1992). Injury in fact exists when the plaintiff has suffered "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Id.* at 560 (citations omitted). Causation exists if the injury is one "that fairly can be traced to the challenged action of the defendant." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976). The redressability requirement is satisfied if the plaintiff's injury is "likely to be redressed by a favorable decision." *Id.* at 38.

Defendants argue that they "have not inspected Plaintiff's property, entered Plaintiff's property, or otherwise given any indication that an unlawful government action is imminent." Mot. Dismiss at PageID.187, ECF No. 13. As explained above, that is why Benjamin lacks standing to bring a free-standing Fourth Amendment claim. But the amended complaint does not assert such a claim. Rather, it argues that the City has violated the unconstitutional conditions doctrine. As already established, that doctrine prohibits the government from conditioning a benefit on the waiver of a constitutional right. Plaintiff's use and enjoyment of their property is a benefit which the City of Saginaw withholds when they levy fines and initiate enforcement proceedings for failure to register vacant property.

The question is thus whether that benefit is conditioned on the waiver of a constitutional right. If, as Benjamin argues, the registration form requires waiver of the right to challenge pre-hearing inspections, the unconstitutional conditions doctrine would apply. Defendants argue, correctly, that the form does not require any such waiver. But that analysis (which requires an inquiry into the language of the waiver and the ordinance) requires an adjudication on the merits.

The question of standing is distinct from the question of whether a party has stated a cause of action. *See Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 797–98 (E.D. Mich. 2012) ("'[H]aving standing to bring a claim does not mean you have a valid claim on the merits.'") (quoting *Langley v. Chase Home Finance, LLC*, No. 10–604, 2011 WL 1130926, at *2 n. 2 (W.D. Mich. Mar. 28, 2011)). If the registration form operated as Benjamin alleges, the constitutional conditions doctrine would arguably be violated. Thus, Benjamin has standing to sue. The form does not operate in that way. Rather, the registration form waiver deals solely with post-hearing remediation efforts and thus Benjamin does not state an unconstitutional conditions claim.

V.

Accordingly, it is **ORDERED** that Proposed Intervenors Jones Family Trust's, Bobby Jones's, and Sylvia Jones's motion to intervene, ECF No. 19, is **GRANTED.**

It is further **ORDERED** that the Intervenors' motion for a preliminary injunction, ECF No. 20, is **DENIED.**

It is further **ORDERED** that Defendants' motion to dismiss, ECF No. 13, is **GRANTED.**

It is further **ORDERED** that the hearing scheduled for September 11, 2018, at 4:00 p.m. is **CANCELLED.**

It is further **ORDERED** that the amended complaint, ECF No. 10, is **DISMISSED.**

Dated: June 21, 2018   s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 21, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager